UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRYLEE DAVIDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARKBOX, INC.,<br><br>Defendant. | CASE NO. 2:26-cv-02073-TL<br><br>ORDER REMANDING CASE |

This matter is before the Court *sua sponte*. Having reviewed the record, the Court finds that it lacks subject-matter jurisdiction over this action and, pursuant to 28 U.S.C. § 1446(c), REMANDS the case to King County Superior Court. *See D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) ("Federal courts are *required* sua sponte to examine jurisdictional issues such as standing." (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2001))).

# I. Background

## A. Commercial Electronic Mail Act and Consumer Protection Act

Washington's Commercial Electronic Mail Act ("CEMA"), Chapter 19.190 RCW, "prohibits sending Washington residents commercial e-mails that contain any false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 596, 567 P.3d 38 (2025) (emphasis removed). "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* at 584. In this case, Plaintiffs allege that they are the recipients of emails from Defendant BarkBox that, among other things, "use false and misleading subject lines designed to deceive consumers about the exclusivity of its sales." Dkt. No. 1-2 (state-court complaint) ¶¶ 3, 5.

## B. Procedural Background

On May 13, 2026, Plaintiffs filed this purported class action in King County Superior Court, alleging violations of CEMA and the CPA. *See generally* Dkt. No. 1-2. On June 12, 2026, Defendant removed the action to federal court, alleging this Court's subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Dkt. No. 1 at 2 (notice of removal).

On July 9, 2026, the Court ordered Defendant to show cause as to why this case should not be remanded to Superior Court. Dkt. No. 18. On July 23, 2026, Defendant responded to the show-cause order (Dkt. No. 22), and Plaintiffs responded on July 30, 2026 (Dkt. No. 25).

# II. Legal Standard

## A. Mandatory Remand

28 U.S.C. § 1447(c) provides, in part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The

statute is imperative: "Section 1447(c) is mandatory, not discretionary." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997).

**B. Standing**

Federal courts are constrained by the case-and-controversy requirement of Article III, which limits the jurisdiction of federal courts to cases where plaintiffs have established standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Standing" exists where a plaintiff is entitled to bring their claims before the court and is an essential ingredient of determining a court's jurisdiction. *See Perry v. Newsom*, 18 F.4th 622, 630–31 (9th Cir. 2021). In order to have standing to bring a lawsuit, a plaintiff must demonstrate an injury that is (1) "concrete, particularized, and actual or imminent" (an "injury-in-fact"), (2) "fairly traceable to the challenged action," and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

## III. Discussion

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins (Spokeo II)*, 578 U.S. 330, 341 (2016). This means that "a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc. (Spokeo III)*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo II*, 578 U.S. at 341); *see Stutsman v. Sirius XM Radio LLC*, No. C25-1113, 2026 WL 2445129, at *2 (W.D. Wash. Aug. 20, 2026) ("[T]he legislature's creation of a statutory prohibition or obligation and a cause of action 'does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]'" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021))).

Here, Plaintiffs allege three types of misconduct. First, Defendant sends false and misleading marketing emails that advertise purportedly internal use only discounts available to employees, friends, and family, but which "[i]n truth . . . are blasted out to everyone on [Defendant's] email list and are available to the general public on [Defendant's] website, not just [Defendant's] employees." Dkt. No. 1-2 ¶¶ 14, 15. Second, Defendant's emails promote "deceptive time limits on [their] sales." *Id.* ¶ 31. For example, promotions advertised as a "Last Call" are often reprised just days after they have purportedly expired. *See, e.g.*, *id.* ¶¶ 34–35. Finally, Defendant's emails "clog up inboxes and waste data space." *Id.* ¶ 48.

But misconduct is one thing; injury caused by that misconduct is quite another. Here, the pleading appears to allege two harms—(1) a violation of Plaintiffs' "statutory right not to receive commercial emails that contain false or misleading subject lines"; and (2) Plaintiffs' actual receipt of the emails which, as mentioned above, has led to clogged inboxes and wasted data space. *Id.* (citing RCW 19.190.030(3)). Neither is sufficient to establish Article III standing.

As to the statutory violation, in *Stutsman*, the court remanded a similar case to state court, "follow[ing] an ever-growing list of decisions finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." *Stutsman*, 2026 WL 2445129, at *4 (collecting cases). Similarly here, the pleading lacks any allegations of economic loss or detrimental reliance. Nor does it include any indication, beyond the oblique reference to clogged inboxes, that the allegedly offending emails were particularly unwelcome. In *Huong v. Beis LLC*, another CEMA case in this District, the plaintiff's pleading described plaintiff's "momentary panic upon reading the subject line of an email," because plaintiff thought "her identity had been stolen[.]" No. C26-2207, 2026 WL 2620511, at *2–3 (W.D. Wash. Sept. 4, 2026). This, at the very least, demonstrated some

unpleasantness, however fleeting, associated with receipt of the emails at issue.[1] Here, however, nothing of the sort has been alleged. As pleaded, then, the statutory violation is not sufficient to demonstrate Article III injury.

As to the clogged inboxes, Defendant categorizes this as "nuisance harm," a concrete injury "traditionally recognized as providing a basis for lawsuits in American courts." Dkt. No. 22 at 9 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021), and citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)). But there are two problems with this argument.

First, notwithstanding the negative connotations of the word "clog," Plaintiffs do not actually allege how the flow of Defendant's emails into their inbox was a nuisance. "[G]enerally, an activity is a nuisance only when it 'interferes unreasonably with other persons' use and enjoyment of their property.'" *Moore v. Steve's Outboard Serv.*, 182 Wn.2d 151, 155, 339 P.3d 169 (2014) (quoting *Tieg v. Watts*, 135 Wn.2d 1, 13, 954 P.2d 877 (1998)). In 2026, the mere receipt of emails—and certainly the receipt of just 24 emails over some 13 months (*see* Dkt. No. 1-2 ¶¶ 15–46)—is hardly an *unreasonable* interference with one's use and enjoyment of their email service. *See, e.g.*, *Latouche v. True Religion Apparel, Inc.*, No. C26-914, 2026 WL 2221402 (D. Md. Aug. 3, 2026) (no Article III standing where plaintiff alleged receipt of "between three to five emails . . . each day").

Second, "courts in this district have found that similar allegations do not bear a close relationship to nuisance, as 'injuries sounding in nuisance require real and appreciable interference, . . . and must be unsolicited.'" *Isbell v. Bebe Stores Inc.*, No. C25-2388, 2026 WL 2797984, at *3 (W.D. Wash. Sept. 18, 2026) (quoting *Nuri v. True Religion Apparel*, No. C25-

[1] Even so, the court concluded that Huong's panicked reaction was "insufficient to constitute an injury in fact that satisfies Article III." *Huong*, 2026 WL 2620511, at *3.

690, 2026 WL 864886, at *3 (W.D. Wash. Mar. 30, 2026)); *see* Restatement (Second) of Torts § 821F(c) ("[T]here must be a real and appreciable invasion of the plaintiff's interests before he can have an action for either a public or private nuisance."; Restatement (Second) of Torts § 892A(1) ("One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it."). Here, Plaintiffs do not allege that the allegedly offending emails *appreciably* interfered with anything, nor do they allege that the emails were unsolicited. In sum, Plaintiffs have not established an injury-in-fact that is sufficiently concrete to confer Article III standing.

* * *

Because Plaintiffs have not sufficiently pleaded an injury, the Court lacks subject-matter jurisdiction, and it does not have authority to consider Defendant's Motion to Compel Arbitration or, in the Alternative, Dismiss (Dkt. No. 16). *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) ("[The Federal Arbitration Act] provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute."); *e.g.*, *Lopez v. Cash Express, Inc.*, No. C11-7116, 2015 WL 1383535, at *6 (C.D. Cal. Mar. 24, 2015) ("Because the action must be remanded for lack of jurisdiction, there is no jurisdiction to act on the Motion to Compel Arbitration."). Accordingly, the Court will not rule on Defendant's Motion; this motion is terminated. *See, e.g.*, *Thomas v. Sec. Indus. Specialists, Inc.*, No. C19-5770, 2020 WL 60210, at *3 (N.D. Cal. Jan. 6, 2020) (terminating defendant's motions to dismiss and compel arbitration after remanding case to state court). Similarly, Defendant's Motion to Stay Proceedings (Dkt. No. 21) is denied as moot.

## IV. Conclusion

Accordingly, it is hereby ORDERED:

(1) This case is REMANDED to King County Superior Court.

(2) Defendant's Motion to Compel Arbitration or, in the Alternative, Dismiss (Dkt. No. 16) is TERMINATED.

(3) Defendant's Motion to Stay (Dkt. No. 21) is DENIED AS MOOT.

Dated this 27th day of October 2026.

Tana Lin
United States District Judge